# Granville, Appellant, *v.* Scranton Coal Co.

*Workmen's Compensation Act — Injuries received while not working — Injuries by machinery not used by the employee injured — "In the course of employment" — "Occupations wholly foreign to employment."*

The Workmen's Compensation Act of 1915 is not a mere variant from master and servant negligence law; negligence and contributory negligence have nothing to do with it.  Its primary purpose was to substitute a method of accident insurance in place of common law rights and liabilities.  It does not require that injuries to be compensable must have arisen "out of the employment"; they need only have occurred "in the course of the employment."

If an accident happens during the course of employment, compensation will not be withheld because the employee was doing something apart from his actual employment, provided he was not

shown to have been doing something wholly foreign to his employment.

An unexplained accidental injury to an employee during his lunch intermission, by machinery which he did not operate and in a part of the employer's premises where he was permitted though not required to be, is an accident in the course of his employment. Merely going from one floor to another in the building or breaker, in which he was employed, would not be doing something wholly foreign to his employment.

Argued March 9, 1921. Appeal, No. 5, March T., 1921, by plaintiff, from judgment of C. P. Lackawanna County, Jan. T., 1920, No. 790, sustaining exceptions to award of the Workmen's Compensation Board in the case of Elizabeth Granville v. Scranton Coal Company. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Reversed.

Appeal from order of Workmen's Compensation Board. Before NEWCOMB, J.

The facts are stated in the opinion of the Superior Court.

The court reversed the order of the Workmen's Compensation Board awarding compensation. Plaintiff appealed.

*Error assigned* was the order of the court.

*Roger J. Dever,* and with him *David J. Davis,* for appellant, cited: Stahl v. Watson Coal Co., 7 Dept. Reps. 195; Kuca v. Lehigh Valley Coal Co., 268 Pa. 163; Flucker v. Steel Co., 263 Pa. 113.

*Charles B. Little,* and with him *James E. Burr,* for appellee.

OPINION BY KELLER, J., April 18, 1921:

The plaintiff's son, Walter Granville, was employed by the defendant in its Pine Brook coal breaker. His

regular duties were to take care of a spiral picker located on a platform above the second floor of the breaker and watch a chute used in connection with cleaning the coal. Occasionally he did other work as directed by the foreman, such as acting as breaker boss, oiling the emery pickers, etc. The breaker stops operations at twelve o'clock for the lunch period of half an hour; the machinery starts again at 12:25, and the men go to work at 12:30.

On April 4, 1919, Granville finished his lunch at 12:20. He was then standing at a window near the sheet iron cutter, on the floor he usually worked on, and spoke a few words to the picker boss. At 12:25 the picker boss gave the signal for the machinery to start and immediately after it started he heard a cry and on running to the bottom floor found Granville's body caught in the gears of the pony rolls. His feet had already passed through the gears and his trunk was then being crushed. He was dead when found. Nobody saw the accident or knew how it occurred, but two of defendant's witnesses testified that from the position of his body and the way the gear covering or safety guard had been thrown down, he must have fallen into the gears feet first. It was not contended that his death was self-inflicted or had been caused by the act of a third person intended to injure the employee because of reasons personal to him. The gear covering was a casing made of heavy wooden planks, weighing about 150 pounds fitting into a groove and spiked fast, which served as a safety guard or protection against accidents from the gears. When the gears needed fixing it was pried up with a bar and lifted to one side, an operation which took about five to ten minutes' time. When Granville was found it was lying as if it had been pushed over. No bar was near, there was nothing to show that Granville had uncovered the gears, except as a result of his fall, and he had not had time to pry it off in the usual way. The pony rolls were located on a platform slightly elevated above the bottom floor and

several platforms or landings below where Granville usually worked, and a distance of about 146 feet from there, including, however, forty steps downward. A large part of the machinery in the breaker is located on such platforms or landings raised above the floor levels, which are connected by open staircases with a railing on only one side. There were at least four ways by which Granville could leave his floor or landing and go out of the breaker and one of them was by or near the pony rolls.

From this evidence the referee found that Granville's death was caused by an accident sustained while he was employed by and on the premises of the defendant company, within the meaning of the Workmen's Compensation Act of 1915, and that the claimant was entitled to an award of compensation as set forth in section 307 thereof.

The Workmen's Compensation Board, on appeal, affirmed the award, holding, under the authority of Flucker v. Carnegie Steel Co., 263 Pa. 113, p. 119, there was a fair presumption under the evidence in the case "that the accident occurred while in the course of his employment for defendant company, there being no evidence to overcome such presumption." The court of common pleas sustained exceptions to the decision of the board and reversed the order affirming the award of compensation.

Our duty in the premises is limited to such consideration of the record as will enable us to ascertain whether there is evidence to support the findings of the referee and the board and if upon such findings, the law has been properly applied: Kuca v. Lehigh Valley Coal Co., 268 Pa. 163.

The learned judge of the court below was apparently of the opinion that an injury is not compensable under the Workmen's Compensation Act unless it had some direct causal connection with the particular work the employee was engaged to do, in other words, unless the

injury arose out of, or was due to, the workman's individual employment; and as Granville's work at the spiral picker and chutes did not require his presence at or near the pony rolls, that his injury was not compensable. The Supreme Court and this court have pointed out a number of times that our Workmen's Compensation Act differs from those of most other states in that the injury to be compensable does not have to arise out of the employment; that it need only occur in the course of it: Dzikowska v. Superior Steel Co., 259 Pa. 578; Lane v. Horn & Hardart Baking Co., 261 Pa. 329; Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454; that the course of employment is not broken by short intervals of time taken for the noonday meal, where the employee remains on the employer's premises, (unless he is doing something wholly foreign to his employment), and that in such circumstances he is still engaged in the furtherance of the business or affairs of the employer: Dzikowska v. Superior Steel Co., supra; Hale v. Savage Fire Brick Co., supra. "Acts of ministration by a servant to himself......performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the Workmen's Compensation Acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food or fresh air or to rest in the shade": Blouss v. D., L. & W. R. R. Co., 73 Pa. Superior Ct. 95.

Thus while Granville was on his employer's premises during the half-hour period allowed for refreshment and rest he was still in the course of his employment and his employer would be liable under the Compensation Act for an accident happening to him during that period, un-

less he was doing something wholly foreign to his employment, and merely going from one floor to another of the building or breaker in which he worked would not be doing something wholly foreign to his employment.

If the accident happens during the course of his employment, compensation is not withheld because the employee does something besides or apart from the thing which he was employed to do provided it is not wholly foreign to his employment. Thus Dzikowska's act of striking a match on his oil-soaked trousers (259 Pa. 578), had no direct or causal connection with loading steel on cars, which he was employed to do, but as smoking ministered to his comfort and enjoyment, it was held to be incidental to and therefore in the course of his employment. So again there was no direct or causal connection between Siglin's employment as a truck driver's helper (261 Pa. 30), and his giving up his seat to two girls and standing on the running board, whence he was jolted off, but though his injury happened from doing something apart from that which he was hired to do, it nevertheless occurred in the course of his employment and was compensable. We pointed out in Hale v. Savage Fire Brick Co., supra, that it is not necessary to entitle the claimant to compensation that the injury be sustained while the employee was actually engaged at the work he was hired to do, and cited a number of decisions from other states in which compensation was allowed for injuries received from accidents occurring during the lunch period, and when the employee was not directly concerned with his employment nor at his usual place of work, inter alia: Riley v. Cudahy, 117 N. W. 765 (Neb.); Thomas v. Procter & Gamble, 179 Pac. 372 (Kan.); Racine Rubber Co. v. Industrial Commission, 162 N. W. 664 (Wis.); Milwaukee Fuel Co. v. Industrial Commission, 150 N. W. 998 (Wis.); Haller v. City of Lansing, 162 N. W. 335 (Mich.); In re Sundine, 105 N. E. 433 (Mass.). "A man does not cease to be an

employee because at certain instants of time he is not actually engaged in work": Corpus Juris, Workmen's Compensation Acts, sec. 72, p. 81. In Von Ette's Case, 223 Mass. 56, 111 N. E. 696, a compositor in a printing office, who fell from the roof while seeking fresh air on a hot night was held within the "course of his employment" though not at the time engaged in labor. If the accident happens during the course of his employment—and that includes during the lunch or rest period spent on the employer's premises—compensation must be paid unless it appears from the evidence that he was at the time of injury doing something wholly foreign to his employment. In the instant case it was not shown what Granville was doing when he fell into the gears or how the accident happened; there was ample evidence under the decisions above cited, that he was at the time it occurred in the course of his employment, the accident having happened while he was on the employer's premises, during the lunch intermission, and there being no testimony that he was doing something wholly foreign to his employment at the time.

The Workmen's Compensation Act is not a mere variant from master and servant negligence law; negligence and contributory negligence have nothing to do with it. "Its purpose is to relieve to some extent the employee who has been injured in the course of his employment from the economic consequences of his injury and make them a part of the cost of operation of the business, to be paid ultimately by the consuming public, and it should be so construed as to carry this purpose into effect": Hale v. Savage Fire Brick Co., supra. The same thought was expressed in somewhat different form by the late Mr. Justice STEWART in his opinion in Blake v. Wilson, 268 Pa. 469, adopted by the court after his untimely death: "All will agree that its primary and general purpose was to substitute a method of accident insurance in place of common law rights and liabilities for substantially all employees, except such as are by

express terms or necessary implication excluded from its operation. It corresponds, so far as general purpose is concerned, with a like act in Massachusetts, of which it has been said in the case of Young v. Duncan, 218 Mass. 346, 'It was a humanitarian measure, enacted in response to a strong public sentiment that the remedies afforded by actions of tort at common law and under the Employer's Liability Act, had failed to accomplish that measure of protection against injuries and of relief in case of accident, which it was believed should be afforded to the workman.'"

Furthermore, section 301 of the Workmen's Compensation Act expressly provides that the term "injury by an accident in the course of his employment" shall include inter alia "all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employee, who, though not so engaged [that is, in the furtherance of the business or affairs of the employer] is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employee's presence thereon [not, thereat] being required by the nature of his employment."

Granville was undoubtedly killed on the employer's premises by the operation of the pony rolls and gears, a part of the employer's business. He was at the time of the injury on the premises, (that is, the breaker), occupied by and under the control of the employer and upon which the employer's business was being carried on, and his (the employee's) presence thereon was required by the nature of his employment. It is too narrow a construction of this section to limit the word premises to the pony rolls and gears in which Granville was caught and killed, rather than the breaker itself. "The place of employment is not confined to the place at which the workman is employed, but may include the places on the master's premises traversed by the em-

ployee in going to and from his work and the places used by the employee with the master's consent": Corpus Juris, supra, section 72, p. 81. The business was carried on in the breaker. It was the premises occupied by and under the control of the employer, and Granville's presence was required thereon; the pony rolls and gears were only a part of the business being operated in the breaker, not separable from the other operations making up the employer's business. Hence by the very terms of the act there was in the case evidence that the employee's death resulted from an accident in the course of his employment.

The court below and the Workmen's Compensation Board both treated the finding of the referee as if it was in effect a distinct finding that Granville's death had occurred from an accident in the course of his employment. We think it may fairly be so considered, and as we have already held that there was evidence to support the finding, it follows that the award should have been affirmed.

The facts in the present case are not at all similar to the Kuca case (268 Pa. 163). There the employee wandered entirely away from the active operations of the mine into an abandoned opening, forming no part of the premises in which the business of mining was then being carried on and was killed by an explosion of gas when about 70 feet down the opening. He could have had no possible business or excuse in this abandoned opening in connection with or in the course of his employment. Here the employee was killed in the breaker, where he was regularly employed, by the very operation of his employer's business at a place on the premises where, though not connected with his work, he was permitted to pass on his way out of the breaker, and during a period which was specially set aside for the refreshment and rest of the various employees and when their presence was not confined to the particular platforms on which they usually worked.

It is a stronger case on the facts than the Flucker case (263 Pa. 113), since in that case there was no evidence that the employee had actually reported to work at the time the accident occurred but his dead body was found a short distance from a footbridge and railroad trestle one of which he would have used if he had been working between the two pumping stations at which he was employed, yet there it was held that the facts were sufficient to sustain a finding that the accident occurred during the course of his employment.

The judgment of the common pleas is reversed, and the order entered by the referee and affirmed by the compensation board is affirmed.    Costs to be paid by appellee.