NOTE.—Syllabus by the Court.

---

## Tomassoni v. Pennsylvania Coal Company.

*Workmen's compensation—Course of employment—Contract miner—Killed outside his chamber.*

A contract miner, T., also a member of the grievance committee of the employees at the employer's mine, after his own day's work was done, went into the chamber of an adjoining contract miner on business of the grievance committee, and was there approached by E., a third contract miner, for advice as to the employment of a laborer. At E.'s request, T. went to E.'s chamber to determine whether the laborer he, T., had in mind would work there. On his way out, 75 feet from E.'s chamber, T. was struck by a falling rock and killed: *Held*, that T. was not functioning as a member of the grievance committee at the time of the accident, but was killed in the course of his employment, and his dependents were entitled to compensation.

Appeal from decision of the Workmen's Compensation Board. C. P. Lackawanna Co., Jan. T., 1923, No. 1106.

*Roger J. Dever*, for claimant; *H. J. Connolly*, for appellant.

MAXEY, J., Feb. 21, 1923.—This is an appeal from the decision of the Workmen's Compensation Board. The claimant's deceased husband was employed by the defendant as a miner. He was also a member of the grievance committee of the employees at the mine where he worked. This committee represented the employees in the adjustment of local grievances between the employees and the defendant company. About noon on Nov. 30, 1921, the deceased, Anthony Tomassoni, completed his day's work as a contract miner, having loaded four cars, four cars comprising a day's shift according to the rules at the Old Forge Colliery, where deceased worked. Upon the completion of his day's work, Tomassoni left his chamber and went into the place of an adjoining

3 D. & C.

Tomassoni v. Pennsylvania Coal Company.

contract miner, No. 531, on business of the grievance committee, and while in this place he was approached by a third contract miner, one Thomas Evans, No. 530. Evans advised Tomassoni that he desired to employ a certain laborer to work with him in his, Evans's, place; but Tomassoni replied that he had a laborer for Evans, and that Evans had better come to the union meeting that night and find out what laborer he would be permitted to employ. Evans then invited Tomassoni into his, Evans's, place, in order that Tomassoni might look it over and determine whether or not the laborer Tomassoni had in mind would accept employment there. While leaving Evans's chamber, after having examined it, Tomassoni was struck by a piece of rock which fell from the roof, and when this rock was removed by those who came to his assistance, he was dead. Tomassoni's work as a contract miner did not require his presence in Evans's chamber.

The foregoing are the facts that are agreed to by the respective parties.

Thomas Evans testified that he told his neighboring miner that he wanted a laborer, and the neighbor advised him to go down to Paoli's place and see Tony, that is, the deceased; that while he was waiting for the smoke to get out of his place he saw Tony, and Tony said he had a laborer who was laid off at Paoli's slope. Evans then invited Tony to come up and look at the place and see whether the laborer would work there. While Tony was in his place he, Tony, helped Evans put a cross-timber up. The deceased then bade him good-bye, and while the deceased was on his way out, seventy-five feet from Evans's place, he was killed by a fall of roof. He was killed near the gangway, and on the way he had to go out to get home. Evans testified that in order to get a laborer he had to see the grievance committee about it, and then he invited Tomassoni to see the conditions at his place, "whether the laborer would work." The last thing Tomassoni said to Evans was: "So long, Evans; be at the union meeting to-night and we will see what laborer we will get you."

Ottavio Paoli testified that Tomassoni was killed on the gangway road.

James Gleason, a member of the United Mine Workers' Executive Board, testified that, pursuant to an agreement "between the miners and operators," there was a grievance committee at this colliery, as well as other collieries, and that "the agreement provides that the aggrieved party will first take up his grievance with the mine foreman, and if he fails to make an adjustment, he then requests the local grievance committee to assist him. If it is necessary that this grievance committee go into the working place to make a personal investigation of anything that might be in dispute, they have that right."

From a review of the evidence, we do not find sufficient to support the theory that the deceased came to his death while functioning as a member of the grievance committee at the Old Forge Colliery. Tomassoni was in Evans's place upon the invitation of Evans, who went to where Tomassoni was and told him to "come up and look at the place and see whether the laborer will work there;" the laborer in question being some laborer that the deceased had in mind for that particular job. We do not see how the selection of a laborer for Evans was a prerogative of the grievance committee. In the light of board member Gleason's testimony, no grievance had either yet arisen or reached the stage where the local grievance committee's assistance was required.

The question then resolves itself into this: If a miner is invited to visit the place of another miner to advise on a matter incident to the latter's work, and

while going out of there is injured, is he injured in the course of employment within the meaning of the Workmen's Compensation Law?

An employee is injured in the course of employment:

1. When he is injured while actually engaged in the furtherance of the business or affairs of his employer, whether upon the employer's premises or elsewhere.

2. When, "though not so engaged," his injury is caused by:

(a) The condition of the premises; or

(b) The operation of the employer's business or affairs thereon, provided he "is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on," and provided "the employee's presence thereon" is "required by the nature of his employment:" Workmen's Compensation Act of June 2, 1915, § 301, P. L. 736, 738.

The phrase "the employee's presence thereon," has been interpreted by the Supreme Court as meaning the employee's presence, not anywhere on the property owned or controlled by his employer, but his presence "at his proper working place," or where "duty or business called him:" Kuca v. Lehigh Valley Coal Co., 268 Pa. 163.

The Superior Court has held that an accident occurs within the course of employment, within the meaning of said section 301 of the Workmen's Compensation Act, even though the employee went to a particular part of the premises where it was not necessary for him to go in connection with his duties; if the accident happens during the lunch or rest period spent on the employer's premises, unless it appears that the claimant at the time of the injury was doing something wholly foreign to his employment: Granville v. Scranton Coal Co., 76 Pa. Superior Ct. 335.

This principle was affirmed in Waite v. Pittsburgh Limestone Co., 78 Pa. Superior Ct. 7.

The Superior Court has held that an employee "going after his dinner-pail at the noon-hour preparatory to eating his dinner is as much in the course of his employment as a man going to his home at the completion of an errand. . . . The fact that he chose for his own convenience to ride instead of walk in going after his dinner would not deprive him of compensation if he was injured on the way:" Blouss v. Delaware, Lackawanna & Western R. R. Co., 73 Pa. Superior Ct. 95, 98.

The Supreme Court has held that a person is injured in the course of his employment if he is injured while on his way to fetch tools with which to work; in other words, while he is upon the premises of the employer and actually in furtherance of the latter's business: Gurski v. Susquehanna Coal Co., 262 Pa. 1.

The Superior Court in the case of Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454, held that an employee is entitled to compensation for injuries received through falling over a wall while attempting to escape from his fellow-employees, on the property of his employer, during the luncheon hour. In that case, the Superior Court said that the purpose of the Workmen's Compensation Act "is to relieve to some extent the employee who has been injured in the course of his employment from the economic consequences of his injury, and make them a part of the cost of operation of the business, to be paid ultimately by the consuming public, and it should be so construed as to carry this purpose into effect." In that case, Justice Keller pointed out that: "Even in those states which provide that the accident must arise out of, as well as in,

3 D. & C.

the course of employment for the resulting injury to be compensable, the rule has been relaxed wherever the sportive act causing the injury has been so usual that it was known to the employer or might be expected in connection with the employment, and in such cases the injury has been held not only to have occurred in the course of the employment, but also to have arisen out of it."

In Dzikowska v. Steel Co., 259 Pa. 578, it is held that a workman's employment is not broken by a short interval of time taken for the noon-day meal, where he remains on the employer's premises (unless he is doing something that is wholly foreign to his employment), and that in such circumstances he is still engaged in the furtherance of the business or affairs of the employer.

In the case of Lavinski v. Delaware, Lackawanna & Western R. R. Co., 3 D. & C. 519, we said, inter alia: "In those cases where the employee when injured was not obviously and immediately furthering his employer's business, we think the test of whether or not he is entitled to compensation . . . might be expressed this way: Was the employee injured while doing something which the employer at the time he and the employee entered into the contract of hiring might reasonably expect the employee to do in the course of his employment, and was he at a place the employer might reasonably expect him to be? If so, he is entitled to compensation."

In that case we said further: "Even under the Workmen's Compensation Law employers do not assume the burden of compensating an employee who is injured while absent without just excuse from his proper working place and while doing something foreign to his employment."

In the case at bar we do not think we are justified in saying that Tomassoni was absent from his proper working place without just excuse at the time he was killed, nor that he was doing something wholly foreign to his employment, nor that he was doing anything which it might reasonably have been expected by his employer at the time he entered into the contract of employment that he would not be doing.

Those who have had any experience in and about coal mines know that it is a common practice for coal miners to visit the working places of one another. A miner is in a much more independent situation in that respect than the average employee. His business as a coal miner does not take the entire time of the working day, and, indeed, very often it does not take even his entire time in the mines. This was true in the case at bar, where Tomassoni had completed his labors by noon. It is quite the usual thing for miners, after firing a shot, while the smoke is clearing away from the face of their chamber, to visit the adjoining chamber. It is quite the usual thing for miners to visit one another's chambers for the purpose of assisting in work, just as Tomassoni assisted Evans in standing a cross-timber, even though that was not his purpose in going into Evans's place.

We are not impressed with the theory that Tomassoni was acting as a member of the grievance committee in going into Evans's place. No grievance apparently had arisen which required his attention, but he did go into Evans's place at the latter's invitation, for the purpose of ascertaining whether or not it was a place that would probably be satisfactory to the laborer whom Tomassoni had in mind to recommend to Evans for that place. In going into Evans's place, Tomassoni clearly was not doing something "wholly foreign to his employment," nor was he in Evans's place "without just excuse," nor was there any fundamental breach of the contract of hiring, for it can be assumed that when Tomassoni was employed as a miner, it was at least implied in the

contract that he might visit chambers of other miners if he cared to do so, as miners have done from the very beginning of coal mining.

This case is easily distinguishable from the case of Lavinski *v.* Delaware, Lackawanna & Western R. R. Co., where the claimant when injured was doing something without just excuse, and doing something wholly foreign to his employment, and doing something which not only was not within the contemplation of his employer at the time he was hired, but was repeatedly forbidden by his employer. We compared that case to that of a gateman employed at a railroad crossing who, abandoning his post of duty, jumps on a passing coal train for a "joy ride" to the next crossing, where he is injured. The present case might be compared to that of an employee of a machine shop who, after completing his day's work, goes to a nearby bench at the invitation of a fellow-employee to discuss a matter incidental to the latter's employment, and while leaving that point is injured. In the former illustration compensation should clearly be denied. In the latter it should clearly be allowed. Furthermore, it should be noted that Tomassoni was killed, not in Evans's chamber, but at or near the gangway road and while on his way home. If he had on a homeward journey gone directly from his own place to the spot where he was killed, it would not be disputed that his dependents came within the protection of the Workmen's Compensation Law. Can it be justly contended that because Tomassoni loitered a little while in a nearby chamber, thereby causing him to pass a certain point at the exact moment there was a fall of roof, his dependents are beyond the protecting pale of the Workmen's Compensation Law? Clearly not. Such a strained construction would deprive the law of much of its humane character and defeat its humane purposes.

When a man is employed he is not impliedly told, in effect: "You must be, at every moment of your working day, just exactly at the spot your immediate duty calls you; and if you depart from there even for a few minutes and are injured, your injuries are not compensable." Since the Workmen's Compensation Law, as before, workmen are expected to act as they have always naturally acted while under employment, and if when injured they are doing something reasonably and naturally incidental to their employment, they are entitled to compensation; and if killed, their dependents are entitled to compensation. If when injured they are doing something not reasonably and naturally incidental to their employment—especially if it is so wholly foreign to their employment that it is an act prohibited, as in the Lavinski case referred to—they cannot justly claim the benefits of the Workmen's Compensation Law.

Counsel for defendant has argued that Tomassoni, in going to Evans's chamber, was not only not furthering his employer's business, but actually interfering with it. This might be true and yet not be conclusive on the question before us, for it is easy to conceive of a situation where a workman might be doing something which actually injures the employer's business and yet which would be something in the course of his employment. A miner might carelessly fire a shot that would break down a water barrier and so flood the mine, but if he was injured in doing so compensation would not be denied him. Of course, if he did the act maliciously and for the mere purpose of wanton destruction, we would have a different situation.

In the case at bar there is nothing in the record to support the contention that Tomassoni was interfering with or hindering his employer's business. Evans testified: "I wanted a laborer. . . . I went down to see Tony (Tomassoni). He said he had a laborer. . . . I said, 'Tony, come up and look at the

3 D. & C.

place and see whether the laborer will work there.'" Tony accepted the invitation and "held up a cross-timber" for Evans, then left, and while seventy-five feet away from Evans's chamber, and while on his own way home, he was killed.

Our conclusion is that Tomassoni was killed in what the law regards as "the course of his employment," and that his dependents are entitled to compensation.

Now, to wit, Feb. 21, 1923, the appellant's exceptions to the findings of fact and conclusions of law and the award of the Workmen's Compensation Board are dismissed, and the action of the board founded on the findings and conclusions so excepted to is sustained.

Judgment is entered against the defendant, in conformity to the decision appealed from, as follows:

To the claimant, Mary Tomassoni, and her minor children, $3600.

To a guardian for and on account of Norma, Romeo and Ada Tomassoni, $1480.

To a guardian on account of Romeo and Ada Tomassoni, $681.43.

To a guardian on account of Ada Tomassoni, $339.86.

To the claimant, Mary Tomassoni, on account of the burial of the deceased, Anthony Tomassoni, $100.

From William A. Wilcox, Scranton, Pa.