## Malky *v.* Kiskiminetas Valley Coal Co. (et. al., Appellant).

*Workmen's compensation—Course of employment—Strike-breakers sleeping on premises—Death from explosion of bomb—Act of June 2, 1915, P. L. 736—Appeals—Evidence.*

1. Article III, section 301, of the Act of June 2, 1915, P. L. 736, is broad enough to include every injury received on the premises of the employer during the hours of employment, so long as the nature of the employment demands the employee's presence there, regardless of whether his presence at the particular place where the injury occurred is actually required, if there is nothing to prove a virtual abandonment of the course of his employment by the injured person, or that, at the time of the accident, he was engaged in something wholly foreign thereto.

2. The actual hours of physical work for which one is engaged to serve is not necessarily controlling. It must be determined from all the facts and circumstances, whether the employee's presence on the premises was required by the nature of his service.

3. Where a coal mining company brings workmen to its mines to take the place of strikers, and lodges them in a bunk house on the premises and there furnishes them food, so that their presence for their work at the mines could be continuously maintained without attack or solicitation by the strikers, such an arrangement is for the advantage of the company, and if a miner is killed during the night at his lodgings by a bomb thrown through a window of the bunk house, he is killed in the course of his employment, and the company is liable for compensation.

4. In workmen's compensation cases, it is not the province of the appellate court to weigh conflicting testimony, or to decide what inferences should be drawn therefrom.

Argued October 8, 1923. Appeal, No. 154, Oct. T., 1923, by Pennsylvania Bituminous Mutual Association, insurance carrier, from judgment of C. P. Allegheny Co.,

July T., 1923, No. 888, affirming decision of Workmen's Compensation Board in case of Tillie Malky v. Kiskiminetas Valley Coal Co., defendant, and Pennsylvania Bituminous Mutual Association, insurance carrier. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from decision of Workmen's Compensation Board, which reversed the action of the referee, refusing an award. Before KLINE, J.

The opinion of the Supreme Court states the facts.

Decision affirmed. Pennsylvania Bituminous Mutual Association, insurance carrier, appealed.

*Errors assigned* were (1-3) dismissal of exceptions, quoting record.

*Harry J. Nesbit,* for appellant.

*R. J. Lucksha,* for appellee, was not heard.

OPINION BY MR. JUSTICE SADLER, January 7, 1924:

This appeal is brought to review an award of the Workmen's Compensation Board, approved by the court below. Payment is resisted by the insurance carrier of defendant company because, as alleged, the accident did not occur in the course of deceased's employment, and was therefore not within the terms of the act, as held in the first instance by the referee. The controlling facts found are practically without dispute, and the question for consideration is whether the law has been properly applied to them.

In 1921, a general strike was in force throughout the bituminous coal fields of western Pennsylvania. This resulted in the closing of defendant's mine in May of that year. It was reopened, in part, in 1922, the number of employees being reduced from sixty-five to seventeen, as a result of local conditions. Malky, with seven others,

coming from Natrona, and other points, about eighteen miles distant, applied for work, and was engaged by the weighmaster, the expense of the trip to the mine being paid by the company. They arrived April 22d, and, from that time until the accident on the 28th, remained continuously upon the property,—with the exception of one Vosnak, who, under escort, went home to secure the services of an additional man, and returned with him. Lodgings were temporarily furnished in a part of the office building, but shortly afterward the defendant, at its cost, constructed a bunk house for their use upon the premises, about twenty feet from the opening of the mine. Provisions were ordered for the men, though it was intended to charge them with the expense thus incurred at pay day. A watchman was supplied to prevent interference by outsiders. The referee found the miners were free to go to adjacent towns to live, but, as said on appeal from his ruling, "it was impossible, due to the circumstances then existing, for the men to secure board and lodging in the village near to the mine."

On April 28th, the shanty was occupied for the first time by the imported men, whose actual labor in digging coal had ended at four, and was not to be resumed until seven the following day. A bomb was thrown through the window during the night, and Malky, with two others, was killed by the explosion which followed. Compensation was denied by the referee, as already mentioned, on the theory that the presence of the men when injured was not required by the nature of their employment; but it was allowed by the board on appeal. The injury did occur on the mining property, and the fact that it was caused by the acts of strikers is immaterial, if the other elements necessary to a recovery appear: Baum v. Industrial Commission, 288 Ill. 516, 123 N. E. 625.

"The provision [of the Act of June 2, 1915, P. L. 736, article III, section 301] is broad enough to include every injury received on the premises of the employer, during

the hours of employment, so long as the nature of the employment demands the employee's presence there, regardless of whether his presence at the particular place where the injury occurred is actually required, if there is nothing to prove a virtual abandonment of the course of his employment by the injured person, or that, at the time of the accident, he was engaged in something wholly foreign thereto": Callihan v. Montgomery, 272 Pa. 56, 63. The "hours of employment" are not confined to the period for which wages are paid, but may extend beyond that time. Thus compensation has been allowed where the injury was inflicted before the beginning of the regular work (Dzikowska v. Superior Steel Company, 259 Pa. 578; Tolan v. P. & R. C. & I. Co., 270 Pa. 12), after it had ended (Carlin v. Coxe Bros. & Co., 274 Pa. 38), or during intervening hours of rest: Hale v. Savage Brick Co., 75 Pa. Superior Ct. 454; Blouss v. D., L. & W. R. R. Co., 73 Pa. Superior Ct. 95; Granville v. Scranton Coal Co., 76 Pa. Superior Ct. 335. And the employment does not end until a reasonable opportunity for departure from the working place has been afforded, which may cover the period required for transportation home: Knoor v. C. R. R. of N. J., 268 Pa. 172; Logan v. Pot Ridge Coal Co., 79 Pa. Superior Ct. 421. It is a question of fact up to what point the relation of master and servant may be said to continue after the employee has ceased actual labor. This is a matter which is primarily for the referee or board to determine, and, if there is evidence supporting a finding made, the conclusion reached will be sustained, for it is not our province to weigh conflicting testimony, or to decide what inferences should be drawn therefrom: Rodman v. Smedley, 276 Pa. 296.

Was the board justified in holding the deceased to be in the course of employment when killed? As observed, the actual hours of physical work for which one is engaged to serve is not necessarily controlling. It must be determined, from all the facts and circumstances,

whether the employee's presence on the premises was required by the nature of the service, for, unless this appears, compensation is not permissible, though the injury occurs on property controlled and used by the employer in his business: Rotolo v. Furnace Company, 277 Pa. 70. In this instance, the board found lodging elsewhere impracticable, because of the feeling engendered by the strike. If, therefore, the performance of the work contemplated was to be accomplished, it became necessary to keep the deceased on the ground. Further, to assure the continuance of the operations, it was requisite that outside interference be prevented, for efforts to have the strike breakers abandon their tasks were naturally to be expected, if the miners went at large. In order that work could be carried on, the employer desired to control the movements of his men during the entire twenty-four hours, and, to insure a supply of necessary labor, the holding of the workmen in their off-time at a point to which access by others was at least made difficult, was required. As said by the court below: "The conclusion is inevitable, that the defendant was fully aware that, if the union men, whom they were taken there to supplant, by virtue of the strike, were permitted to talk to the employees, they would leave their employment, either as a result of persuasion or intimidation, and the company would be less able to operate its mine; to obviate this contingency, the men were confined to their quarters, so that all contact with outsiders would be avoided."

The carrying of the employee to and from work, indirectly of benefit to the master, may be within "the course of employment," while the transportation continues, as heretofore noticed: Knorr v. C. R. R. of N. J., supra. With like reason, it should be held that the occupancy of a house on the premises, under the peculiar circumstances appearing here, provided so that he might be on hand during working hours, was of advantage to the employer, and, when injury occurred thereon, the loss should be compensable. In Lawton v.

Diamond C. & C. Co., 272 Pa. 74, an award was made under a similar state of facts, without discussion of the point here involved. There, the claimant was superintendent of a landing, and lived with his family in a houseboat attached. After regular hours, but while engaged about the wharf, an injury occurred.

It is a fair inference from the evidence to conclude that the presence of Malky was in furtherance of the needs of the master who was enabled by the segregation of the men to secure help for the actual mining which continued from seven until four. That the company believed this necessary is clearly indicated by its action in furnishing sleeping quarters, the required provisions, and the service of a watchman to prevent the approach of those from the outside. It was for the employer's interest the arrangement was effected, so that the digging and removal of the coal could be made possible, and the compensation board was justified in so holding. The injury occurred on the premises, where, in view of the attending circumstances, the presence of the employee was required, and brings the claim within the scope of the act.

The judgment is affirmed.