Lewis, Appellant, *v.* Capital Bakers, Inc., et al.

Argued November 11, 1940.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ.

*Spencer W. Hill,* for appellant.

*Michael Kivko,* of *Knight & Kivko,* with him *Harry Alvan Baird,* for appellee.

OPINION BY BALDRIGE, J., March 12, 1941:

The question before us in this workmen's compensation case is whether claimant's husband, James Garfield Lewis, was in the course of his employment when he met his death on October 26, 1934 on defendant's premises.

Lewis had been employed for several years prior to his death as a general handy man around defendant's baking plant at Williamsport, Pennsylvania. His usual hours of employment were from 7:00 a. m. to 4:00 p. m., but he was subject to call at any time, and frequently remained on the premises after four o'clock to repair machinery, and on a number of occasions returned after his supper to do emergency work. On the afternoon of October 26, 1934, Lewis, at the request·of a fellow worker, Saboski, repaired a link of a chain in a machine. Saboski last saw Lewis go through a door into another part of the building at approximately five o'clock.

Lewis was last seen alive by two young girls. The elder of the two, Margaret Young, thirteen years of age, testified that she and her companion were buying

bread at a retail window in a garage adjoining the bakery proper. Lewis, who apparently was of a jolly and playful disposition, engaged these young girls in a game of tag. He tapped Margaret on the shoulder and she chased him across the alley to the loading platform in the first floor of the bakery where Lewis lifted up the single sliding elevator gate, and looked up. Margaret said to him: "You can't get down in there, the elevator is upstairs." She testified that then "he looked up like that (indicated looking up) and just went backwards." She afterwards explained that he "jumped" and "made a leap down backwards," into the elevator shaft. He landed on his feet at the bottom of the pit 14½ feet below the first floor, fell on his back and then got up and ran over to the corner. The girls then called to Lewis that they were going home. According to Margaret Young's testimony, this occurrence took place about "half past five" that afternoon. Lewis' body was found lying on its side in the corner of the elevator shaft ten days later, on November 5, 1934. Death was found to be due to hemorrhage of the brain induced by trauma to the skull.

Referee Hess, before whom the original hearing was held, found in his fifth finding of fact that "the deceased was not in the course of his employment at 5:30 p. m., on October 26, 1934. Your referee further finds that even if the deceased was in the course of his employment that he took himself out of the same when he raised the gate to the elevator shaft and deliberately jumped from the platform to the floor below." Compensation was refused.

Upon an appeal by the claimant, the board amended the referee's second finding, set aside his fifth finding, and substituted its finding of fact No. 2 that Lewis "came to his death as the result of falling down an elevator shaft on the premises of the defendant company; that the deceased had no regular hours of employment, although his tour of duty began at 7:00

o'clock in the morning and ended at 4:00 in the afternoon. Deceased frequently worked until 5:00 or 6:00 o'clock in the afternoon. From time to time, however, he was obliged to report in the evening for emergency work. Because of the fact that he was constantly on call, he maintained a cot on the employer's premises for his convenience. This was done with the approval of his supervisor. At approximately 4:10 o'clock on October 26, 1934, he was asked to put a link in a chain. He did this in about ten to fifteen minutes, but stood by for an additional ten to fifteen minutes in order to observe the efficiency of this repair in operation. His instructions were to return to work that evening at about 8:00 p. m. for the purpose of doing some extra work in the dough room, which could not be done while the machinery was in operation.. It was deceased's custom to have his evening meal at his home at about 5:30 p. m. and he had informed his wife earlier in the day that he would be home about that hour for supper. He, apparently, was actively engaged in work at the plant until nearly five o'clock." The board in its fifth finding of fact, held that the "deceased was in the course of his employment at 5:30 p. m. on October 26, 1934, and that his indulgence in horse-play at that moment, shortly after his regular work was over, did not take him out of the course of his employment ......" Accordingly the board awarded compensation.

An appeal was taken by the defendant to the court of common pleas, which held that there was no testimony to support the board's fifth finding of fact, but on the contrary "the testimony shows he [deceased] was killed while engaged in something foreign to his employment." The court then returned the record to the board for further hearing and the board in turn remitted the record to the referee. The only additional testimony produced at the further hearing was that of the manager of the defendant's bakery, who testified

that the employees had been given instructions not to use the elevator except for freight.

Referee Conniff, before whom this testimony was taken, found that the deceased "deliberately loosened and lifted the elevator gate above his head and, then, wilfully, wantonly, recklessly, irrationally, and even against the warning of danger given by the young girl, jumped backwards and into the pit of the elevator shaft," and refused an award.

The board, on the second appeal by the claimant, reversed the referee, sustained the appeal, and granted an award. The defendant and its insurance carrier then appealed a second time to the court of common pleas, which held that there was no evidence to support the board's essential findings and concluded as a matter of law that the deceased was not in the course of his employment when he met his death, and entered judgment for defendant. Claimant appealed.

There is no dispute that Lewis met his death while on the premises of his employer. "Under the Compensation Act, an injury in the course of employment embraces all injuries received while engaged in furthering the business of the employer, and injuries received on the premises, subject to these limitations: (1) the employee's presence must ordinarily be required at the place of injury, or, (2) if not so required, the departure of the servant from the usual place of employment must not amount to an abandonment of employment, or be an act wholly foreign to his usual work;' it must be merely an innocent or inconsequential departure from the line or place of duty." *Shoffler v. Lehigh Valley Coal Co.,* 290 Pa. 480, 483, 139 A. 192. See, also, *Tappato et al. v. Teplick & Eisenberg Co. et al.,* 133 Pa. Superior Ct. 231, 234, 2 A. 2d 545; and *Adams v. Colonial Colliery Co.,* 104 Pa. Superior Ct. 187, 158 A. 183.

Whether or not the underlying findings of fact are sufficient to bring the case within the statutory limitation

of "course of ...... employment" under Section 301 of the Act of June 2, 1915, P. L. 736, as amended 77 PS §411, is a question of law to be reviewed by the courts. *Flucker v. Carnegie Steel Co.*, 263 Pa. 113, 106 A. 192; *Callihan v. Montgomery,* 272 Pa. 56, 115 A. 889; *Boyd v. Philmont Country Club et al.,* 129 Pa. Superior Ct. 135, 195 A. 156. Where a claim is supported by substantial, competent evidence the findings of the compensation authorities are conclusive. Evidence amounting to a mere scintilla or doing nothing more than creating suspicion of the existence of the fact to be established is insufficient: *Washington, Virginia & Maryland Coach Company v. Labor Board,* 301 U. S., 142, 147, 57 S. Ct. 648, 650, 81 L. Ed. 965.

There is no proof that Lewis was engaged in any work or that his presence on the premises was required after five o'clock on the day in question. Under the uncontradicted testimony of Saboski, Lewis was through repairing the chain on the machine by five o'clock at the latest, and the undisputed statement by Margaret Young shows that the game of tag took place at about five-thirty. True, it was stated that Lewis sometimes, although "very seldom," worked as late as five or six o'clock, and that he kept a cot on the premises with the manager's assent, where he slept occasionally. These facts, however, are not in conflict with the evidence as to the time decedent was last seen at work or the manner in which the fatal occurrence took place on the afternoon in question. There is no evidence whatever that he performed any other task about the bakery or garage after he completed the repairs to the chain, or that he was on defendant's premises where his employment required him to be on this particular day at the time of the accident, or that he was doing anything at the time of the fatal occurrence that bore any relation to his employment. The undisputed facts show that he was engaged in an act wholly foreign to his employment, amounting to an abandonment thereof.

This is not a case of merely finding the body of an employee on the premises of the employer under circumstances indicating an accidental death. The exact facts as to the time, manner, and place of Lewis' death are established by the uncontradicted testimony of an eye witness.

Decedent's action clearly brought him within the excepted class of injuries occurring on the employer's premises, as his conduct showed a virtual abandonment of the course of his employment, and that, at the time of the accident, he was engaged in something wholly foreign thereto: *Callihan v. Montgomery*, supra, p. 63. Here, as in *Beamer v. Stanley Co. of America et al.*, 295 Pa. 545, 547, 145 A. 676, the "deceased met death accidentally while on the premises, but as the result of a [the] commission of an act which bore no relation to his employment. The fact of employment is not the sole basis for compensation."

Cases relied upon by appellant, involving accidents occurring during a moment of horse play among fellow employees at lunch hour or other temporary moments of leisure, such as *Hale v. Savage Fire Brick Co.*, 75 Pa. Superior Ct. 454; *Granville v. Scranton Coal Co.*, 76 Pa. Superior Ct. 335; *Waite v. Pittsburgh Limestone Co.*, 78 Pa. Superior Ct. 7; *Oldinsky v. P. & R. C. & I. Co.*, 92 Pa. Superior Ct. 328, and *Dzikowska v. Superior Steel Co.*, 259 Pa. 578, 103 A. 351, are distinguishable from the present case and are not controlling. Here the indulgence in a game was not with fellow employees; it occurred a half hour after Lewis was last seen at work, and, as above stated, involved an act wholly foreign to his employment. Nor does the decedent come within the principle that the employment does not end until a reasonable opportunity for departure from the working place has been afforded: *Malky v. Kiskiminetas Valley Coal Co.*, 278 Pa. 552, 123 A. 505. There was no evidence to support the conclusion that decedent's loitering around the premises

178

was for the purpose of changing his clothes, putting away his tools, or doing other matters of that character. The judgment of the court below is affirmed.