Argued and submitted February 23, affirmed August 4, reconsideration denied
October 27, petition for review denied November 23, 1993 (318 Or 97)

In the Matter of the Compensation of
Maria A. Hernandez, Claimant.

## LEO POLEHN ORCHARDS
and Farmers Insurance Company,
*Petitioners,*

*v.*

Maria L. HERNANDEZ,
*Respondent.*

(90-18037; CA A75150)

857 P2d 213

Craig A. Staples, Portland, argued the cause for petitioners. With him on the brief was Roberts, Reinisch, Mackenzie, Healey & Wilson, P.C., Portland.

Richard M. Walsh, Salem, argued the cause for respondent. With him on the brief was Olson, Rowell & Walsh, Salem.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

At issue in this case is whether claimant's injury arose out of and in the course of her employment. The Workers' Compensation Board found that it did. Employer seeks review of that decision. We affirm.

Claimant and her husband are migrant farm workers who were hired to work for employer in one of its cherry orchards located near The Dalles. Employer offered its workers temporary housing at a migrant labor camp on the premises. Although employer did not contractually require all of its workers to live in the camp, the vast majority of them lived there, due to an absence of available housing in The Dalles and the lack of any public transportation to and from the work site. In 1990, all but one of the 150 workers lived on the premises. Employer cleaned the camp grounds daily and washed the associated outdoor toilet facilities by hosing them down with water.

On July 9, 1990, claimant's husband compensably injured his ankle and was unable to work. Claimant asked employer for permission to take a few days off to care for her husband, and employer agreed, allowing claimant and her husband to remain in the labor camp during husband's recovery.

On July 12, 1990, claimant walked from the camp to the outdoor toilet to empty her husband's bedpan. As she left the outhouse, she slipped in a mud puddle and fell, injuring her right ankle and back. After four days in the hospital, she returned to the camp and remained there until the end of the cherry picking season. She filed a claim for her injuries, and the insurer denied compensability, contending that claimant's injury did not arise out of and in the course of employment. Claimant requested a hearing, and the referee concluded that her injury was not compensable.

The Workers' Compensation Board reversed. It relied on the so-called "bunkhouse rule," which provides that injuries to employees required to live on employer's premises generally are compensable if the source of the injury was a risk distinctly associated with the conditions under which the employees are required to live. *See generally* 1A Larson,

*Workmen's Compensation Law* 5-234, § 24.10 (1993). According to the Board, the bunkhouse rule is consistent with the general principles of compensability found in the applicable statutes and case law. It then found that claimant was, for all practical purposes, required to live on the premises because there was no other housing readily available and that the source of her injuries was the mud puddles created by employer's own maintenance activities.

■     Employer assigns error to the Board's conclusion that claimant's injury is compensable. According to employer, the Board misapplied the statutory requirement that a compensable injury "aris[e] out of and in the course of" claimant's employment. ORS 656.005(7)(a). Applying the proper test, employer argues, compels the conclusion that claimant's injury is noncompensable, because it occurred while she was off work, caring for her husband. We disagree.

Claimant has the burden of proving that her injury is compensable. *Phil A. Livesley Co. v. Russ*, 296 Or 25, 28, 672 P2d 337 (1983). A "compensable injury" is one "arising out of and in the course of employment." ORS 656.005(7)(a). The Supreme Court has held that "arising out of" and "in the course of" employment are not to be treated as two separate tests, both of which must be met to establish compensability. Instead, the statute requires a "unitary 'work connection' approach," which focuses on the single inquiry of whether the relationship between the injury and the employment is sufficient to allow compensability. *Rogers v. SAIF*, 289 Or 633, 642, 616 P2d 485 (1980). That inquiry should be conducted in a manner that best effectuates the basic purpose of the Workers' Compensation Act, which is

> "the financial protection of the worker and his/her family from poverty due to injury incurred in production, regardless of fault, as an inherent cost of the product to the consumer." 289 Or at 643 (quoting *Allen v. SAIF*, 29 Or App 631, 633, 564 P2d 1086 (1977)).

The variety of claims brought under the Act has led to the articulation of several specialized concepts and ways of categorizing employee activities that help to determine whether an injury has sufficient "work connection" to make it compensable; for example, going and coming cases, special errand

cases, lunch hour cases, dual purpose trip cases and horseplay cases. *Allen v. SAIF, supra,* 29 Or App at 634.

One such category of cases involves "personal comfort" activities that occur on the employer's premises. Injuries arising out of such activities at work may be compensable. *Clark v. U.S. Plywood,* 288 Or 255, 266-67, 605 P2d 265 (1980). Similarly, injuries arising out of personal comfort activities are compensable when the employee was not at work but was required to reside on the premises and remain continuously on call. *Wallace v. Green Thumb,* 296 Or 79, 84, 672 P2d 344 (1983). The basic underpinning of those cases is that it is the obligation of employment to be on the premises that creates the risk of injury to the employee; when the employee is free to leave when he or she pleases, that employment connection does not exist.

The bunkhouse rule represents an incremental extension of that line of cases. According to this rule, as it is generally formulated, if the resident employee has fixed hours of work and is not continuously on call, an injury suffered on the premises is compensable

> "if the course of injury was a risk associated with the conditions under which claimant lived because of the requirement. of remaining on the premises." 1A Larson, *Workmen's Compensation Law* 5-234, § 24.00 (1993).

Although it has been adopted in many jurisdictions,[1] the courts in Oregon have not yet had occasion to decide whether

---

[1] *See, e.g., Lujan v. Payroll Exp., Inc.,* 114 NM 257, 837 P2d 451 (NM Ct App 1992) (logger died from carbon monoxide poisoning while sleeping in van on-site; held compensable under bunkhouse rule); *McCall v. McCall Amusement, Inc.,* 748 SW2d 827 (Mo App 1988) (employee injured in fire while on amusement park premises; held not compensable under bunkhouse rule because residence at park not required); *Torres v. Laurell Hill Nursery,* 470 NYS2d 897 (1983), *aff'd mem,* 64 NY2d 895, 476 NE2d 1005 (1985) (resident migrant worker injured on employer's premises; held compensable because employer provided living quarters as part of wage and required workers to live there); *Mecca Farms, Inc. v. Espino,* 414 So 2d 572 (Fla Ct App), *rev den* 422 So 2d 842 (Fla 1982) (migrant worker shot by co-resident in employer-provided labor camp; held compensable under bunkhouse rule); *Doe v. St. Michael's Medical Ctr.,* 184 NJ Super 1, 445 A2d 40 (1982) (medical technologist sexually assaulted while living in hospital dormitory, but not on duty; held compensable under bunkhouse rule); *Pearson v. Taylor Fruit Farm,* 18 Ohio App 2d 193, 248 NE2d 231 (1969) (fixed-hour resident farm hand burned in bunkhouse fire while off duty; held compensable under bunkhouse rule); *Argonaut Ins. Co. v. Workmen's Compensation Appeals Bd.,* 247 Cal App 2d 669, 55 Cal Rptr 810 (1967) (resident ranch hand injured during leisure time; held compensable under bunkhouse rule).

the bunkhouse rule represents a proper application of the work connection requirement of ORS 656.005(7)(a).

The rule was mentioned by the Supreme Court in *SAIF v. Reel*, 303 Or 210, 735 P2d 364 (1987). There, the claimant was injured in an explosion in his camper, which he had parked at a construction site where he worked. He lived in the camper because the job site was located some 90 miles from his home. He was not, however, required by the employer to do so; other employees commuted from their homes, stayed in apartments or mobile homes or lived on site as did the claimant. The court held that, under the circumstances, the claimant's injury did not occur within the course of his employment. While it noted the bunkhouse rule, it observed that, "[a]ssuming without deciding that we would adopt the same or similar rule were the case presented," the claimant's case did not fall within that rule because he was in no way required to live on the employer's premises. 303 Or at 218.

We agree with the Board that the bunkhouse rule is consistent with the work connection requirement of ORS 656.005(7)(a). When an employee is required to live on an employer's premises and is injured as a result of the condition in which the employer maintains those premises, there is a sufficient connection between injury and employment to establish compensability. Whether the resident employee is continuously on call is not determinative. It is the obligation of employment to reside on the premises that subjects the employee to the risk that resulted in injury. *See Wallace v. Green Thumb, supra*, 296 Or at 84.

The Board found that claimant's injury was compensable under the bunkhouse rule, because she was required to live on the employer's labor camp and because her injury was a direct result of the conditions in which employer maintained that camp. We review those findings for substantial evidence. ORS 656.298(6); ORS 183.482(7), (8).

We address first the question of whether claimant was required to live on the employer's premises. It is true that claimant was not required in any contractual sense to live on the employer's premises. Nevertheless, there is evidence that

claimant had no other practical alternative.[2] There is testimony from employer's field manager that it did not want to provide housing for its workers, but it had to, "[b]ecause there's no place to live otherwise." The manager testified that, at least during the picking season, The Dalles simply does not have any housing for workers such as claimant. Claimant testified that it was her understanding that she was required to live at the employer's migrant labor camp, and that, in any event, she and her family had no other place to live. Consistent with that testimony, there is evidence that, of the 150 workers who picked cherries for employer, all but one lived at the camp. Taken as a whole, the testimony provides substantial evidence that claimant was required to live on employer's premises.

Employer argues that the record establishes no real obligation to live on the premises, only that claimant was permitted to do so. In particular, employer contends that the Board incorrectly found that nearly all of the workers lived at employer's camp. According to employer, its camp facilities had a capacity of only 120 people, so a significant number of employees *must* have been living elsewhere. In so arguing, employer ignores its own testimony to the contrary.[3] Moreover, it implies that we should weigh the evidence in a way that is inappropriate on appellate review. That the camps had a capacity of only 120 could support an inference that no more than 120 workers actually resided on the premises, but that is not the only inference that reasonably could be drawn from the evidence.

We next address the Board's finding that claimant's injury was a result of the condition in which employer maintained the premises. Employer apparently concedes that the Board's finding on this issue is supported by substantial

---

[2] Larson observes that, while the cases are less than uniform where on-premises living is not contractually required, the "better view" upholds compensability when living on the premises is practically required. 1A Larson, *Workmen's Compensation Law* 5-271, § 24.40 (1993). We have previously expressed approval of Larson's view. *SAIF v. Reel*, 81 Or App 258, 260, 724 P2d 914 (1986), *aff'd on other grounds* 303 Or 210, 735 P2d 364 (1987).

[3] Employer also argues that there is no evidence to support the Board's conclusion that all but one of the workers lived in the camp. The record, however, indicates that employer's own field manager testified that he knew of only one worker who did not live in the labor camp.

evidence. In any event, the record is clear that claimant was injured when she slipped in a mud puddle that was created by employer's act of hosing down the outhouse areas as part of its routine maintenance of the camp.

■     Employer also assigns error to the Board's award of attorney fees to claimant in the amount of $7,020. It argues that the Board failed to explain adequately the basis for the award. In the alternative, it argues that the Board awarded an excessive amount. We review the Board's decision for an abuse of discretion. ORS 656.298(6); ORS 183.482(7), (8).

■     Although the Board is required to consider all relevant factors in determining whether to make an award of attorney fees, it is not required to make specific findings as to each one. *Diamond Fruit Growers v. Davies*, 103 Or App 280, 282, 796 P2d 1248 (1990). Here, the Board noted that it had considered all of the factors in the relevant rules and based its award on its evaluation of the time claimant's attorney devoted to the case, the complexity of the issues, the value of the interest involved and the risk that counsel's efforts might go uncompensated. That evaluation is sufficient.

As for the amount of the award, we find no abuse of discretion.

Affirmed.