**Laura O'ROURKE, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GART-LAND), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2013.

Decided Jan. 8, 2014.

Michael E. DeMatt, Greensburg, for petitioner.

Jeffrey J. Russell, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, President Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge McCULLOUGH.

Laura O'Rourke (Claimant) petitions for review of the August 29, 2012 order of the Workers' Compensation Appeal Board (Board), which reversed the decision of a workers' compensation judge (WCJ) granting Claimant's claim, review, and medical review petitions. We reverse.

**Background and Procedural History**

This case involves a state-funded program under which Claimant was employed by her son, Joshua Gartland (Employer), to provide attendant care for him at her residence in exchange for an hourly wage. On May 7, 2009, Claimant filed a claim petition against Employer and the State Workers' Insurance Fund alleging that she

sustained work-related injuries while in the course of her employment. Claimant averred that while she was sleeping in her bed, Employer cut her throat with a butcher knife and inflicted three other stab wounds, resulting in loss of functioning in her left arm, soft tissue injuries, and psychological injuries. On October 27, 2009, Claimant filed a review and a medical review petition, alleging that she needs medical treatment and is unable to work because she suffers from post-traumatic stress disorder. (Reproduced Record (R.R.) at 3a–5a.)

During the hearings, Claimant, Tonya Volkman, and Maria Phillips (both of whom are associated with the state-funded program) testified live or via deposition. Employer did not participate in the proceedings before the WCJ.[1] The WCJ's relevant findings of fact and credibility determinations are as follows:

5. [Employer], based on the credible testimony of [Claimant] is the natural son of [Claimant.] **[Employer] ... had not lived with his mother since he was 15 years old.** [Employer] had significant health issues resulting from a long history of drug problems. But, he did not have a history of violence before April 11, 2009. [emphasis added.]

6. Based on the credible testimony of [Claimant], [Employer] underwent the amputation of his leg at Presbyterian Hospital in Pittsburgh sometime in 2007.... He then spent 6 months at the Riverside Rehabilitation Center ... [where] **Maria Phillips, coordinator for the Three Rivers Center for Independent Living, approached [Claimant] ... about caring for [Employer] in her home until he got better and could live independently.** [Claimant] agreed [and Employer] moved into his mother's residence on July 7, 2008. [emphasis added.]

7. Based on the credible testimony of both [Claimant] and Tonya Volkman, coordination specialist for AccessAbilities and the attachments to Ms. Volkman's deposition, funding (payment for [Employer's] care) was provided by the state under a program with the Pennsylvania Department of Welfare. Under the consumer model, [Employer] was established as [Claimant's] employer with AccessAbilities acting as a payroll agent. [2]

8. [Claimant] ... was hired to provide attendant care to [Employer]. That care included assisting him with his transfers [and] providing personal care[,] including assistance with bathing and dressing, doing laundry, preparing meals, and providing transportation....

1. The criminal docket of the Westmoreland County Court of Common Pleas indicates that Employer pled guilty to attempted homicide, simple assault, aggravated assault, and reckless endangerment of another person. (WCJ's Findings of Fact Nos. 2, 18.)

2. Specifically, under the consumer model of the state-funded program, the agencies' role in the employment arrangement was limited to "cutting the paychecks" and conducting monitoring visits to make sure that Employer's needs were being met, and Employer was designated as the official employer. (R.R. at 68a, 73a.) As Volkman from AccessAbilities explained:

A consumer model is when a consumer [*e.g.*, Employer] applies for Tax ID number in the State of Pennsylvania. They actually become an enterprise within the State of Pennsylvania and [an] employer. They complete the paperwork, they are given a Tax ID number, they are given a Workman's [sic] Comp. policy, and they become the employer and it is their responsibility to locate, hire, train, discipline and terminate their own staff. It's the consumer's responsibility under that model.

(R.R. at 63a.)

9. Based on the credible testimony of Ms. Volkman, [Employer's] care did not include 24–hour or nighttime care even though the care was to be provided in [Claimant's] home. [Employer] did not meet the program's qualifications for 24–hour care since he did not suffer from a traumatic brain injury. Even if he had met the qualifications, the nighttime provider of the care had to be awake, not sleeping, during the period providing nighttime care. **But, as [Employer] was the employer, he could request care during evening or night time hours provided the worker was awake when providing the care.** [emphasis added.]

10. Based on [Claimant's] credible testimony and Ms. Volkman, funding for [Claimant's] wages was provided for up to 64 hours per week or 128 hours every two weeks. **[Claimant] worked 40 hours from Monday through Friday and 12 hours per day on Saturday and Sunday.**

\* \* \*

15. [Claimant's] timesheets ... revealed that she did not work consistently in the evenings during the week days.... Her weekend hours always included evening hours [and] she would normally work up to 12 hours per day on the weekend. [Claimant] could not get the 12 hours per day on the weekend unless she [worked] evening hours.

(WCJ's Findings of Fact Nos. 5–10, 15.)

The WCJ described the incident in which Claimant sustained her injury as follows:

4. On Friday, April 10, 2009, [Claimant], based on her credible testimony went to bingo in the evening.... When she returned from bingo around 10:00 p.m., [Employer] wanted her to fix him something to eat. [Claimant] and [Employer] argued because she wanted to change her dress before getting him something to eat. After changing her dress, she got [Employer] something to eat. Before going to bed around 11:30 p.m., [Claimant] made the couch up as a bed for [Employer]. He routinely slept on the couch. Around 1:30 a.m. on Saturday, April 11, 2009, while she was asleep in her bed, [Employer] attacked her.

(WCJ's Findings of Fact No. 4.)

The WCJ further found as follows:

16. Although [Claimant] logged her hours ... for Friday, April 10, 2009, as 8:35 a.m. to 4:10 p.m., this [WCJ] finds her testimony credible that, after returning from bingo around 10:00 p.m., she had fixed [Employer] something to eat and made his bed before going to sleep. Her testimony that she intended to include the time for fixing the meal in the hours listed for Saturday was credible.

17. This [WCJ] finds that [Claimant] was not engaged in the furtherance of [Employer's] business or affairs at the time of the attack. The attack occurred while [Claimant] was sleeping. Although [Claimant] testified that she slept in the downstairs bedroom in order to hear [Employer] if he needed her during the night, she never testified that she routinely provided care to him during the night. In addition, his care plan, upon which the funding for her wages was based, did not include nighttime care. Even if it did, it required the nighttime care giver to remain awake for the nighttime hours.

18. **Furthermore, this [WCJ] finds that [Employer] did not establish that [the] attack was motivated by reasons that were strictly personal ... and not related to [the] employment relationship.** ... The record taken as whole only established that [Employer] at-

tacked [Claimant] in her bed at their home. It never established why the attack occurred.

19. This [WCJ] finds, given the circumstances as to how the employment relationship between [Claimant] and her son evolved, **that the fact that she could and did provide care to [Employer] in her home was crucial to the employment relationship that she had with her son.** This situation is unique in that their employment relationship arose out of the family relationship. The care provided by [Claimant] could have been provided to [Employer] at another residence. **But, before moving in with [Claimant] in July 2008, [Employer] did not have another residence.** [Employer] was staying at the Riverside Rehabilitation Center. **When Ms. Phillips from the Three Rivers Counsel for Independent Living approached [Claimant], she asked her to provide care for [Employer] in her home, not in a separate residence established for [Employer].** Having [Employer] **move into her home enabled [Claimant] to provide the state funded care required by [Employer].** Although Ms. Volkman testified that the program funding [Claimant's] wages for providing [Employer's] care did not require the caregiver to live with the client, **the program approved the care knowing that [Employer] had moved into [Claimant's] home and was receiving his care there. [Claimant's] home was also [Employer's] legal residence by the time the attack occurred.** [emphasis added.]

(WCJ's Findings of Fact Nos. 16–19.)

Based upon these findings, the WCJ concluded that, **"based on the record tak-** en as a whole, [Claimant] demonstrated that her employment with [Employer] **required** her to be on the employer's premises at the time that she sustained her injuries."** (WCJ's Conclusion of Law No. 3) (emphasis added). The WCJ further concluded that it was Employer's burden to prove that the attack occurred due to personal animosity, and that Employer failed to establish that the assault was motivated by personal animosity against Claimant. (WCJ's Conclusions of Law Nos. 4–5.) By order dated January 10, 2011, the WCJ granted Claimant's claim, review, and medical review petitions. The WCJ awarded compensation at the rate of $460.16 per week beginning April 12, 2009. In addition, the WCJ awarded Claimant 47 weeks of compensation for disfigurement.

Employer appealed to the Board, contending that the WCJ committed legal error in concluding that the injury was compensable on the basis that Claimant was required to be at Employer's premises at the time of the injury. Employer also argued that the WCJ's finding that Claimant was required to be at the premises was not supported by substantial evidence.

In a 4–2 decision, the Board reversed. Initially, the Board noted that the WCJ found in Finding of Fact No. 17 that Claimant was not engaged in the furtherance of Employer's business or affairs at the time of the assault. Reiterating a well-settled principal of law, the Board correctly stated that Claimant was therefore obligated to prove, among other things, that her presence on the premises was **required** by the nature of her employment.[3] In this regard, the Board

3. Typically, when a claimant is not furthering the interest of the employer at the time of the injury, the claimant must prove, among other things, she was required by the nature of her employment to be on the employer's premises at the time she sustained the injury. *Allegheny Ludlum Corp. v. Workers' Compensation*

analogized the facts of this case to those presented in *Pypers v. Workmen's Compensation Appeal Board (Baker)*, 105 Pa. Cmwlth. 448, 524 A.2d 1046 (1987). In *Pypers*, the claimant, a kitchen aide at a restaurant, finished her work shift but remained at the restaurant to socialize and then slipped on ice in the employer's parking lot as she was leaving. On these facts, this Court concluded that the claimant was not required to be on the employer's premises at the time of the injury, reasoning as follows:

> It is clear ... that [the claimant's] activities upon finishing her duties and before being injured amounted to more than a mere temporary departure from her employment. Rather, she had completed her duties as a kitchen aide, the position for which she was hired, and then embarked on a course of social recreation separate and distinct from the duties of her employment. Having finished her work, she was no longer required by the nature of her employment to be present in [the employer's] establishment, and, in her recreational capacity, she assumed the same status as the other patrons. Therefore, when [the claimant] terminated her duties and began socializing with customers in the restaurant as an ordinary patron, she ceased to be within the course of her employment for purposes of workmen's compensation.

*Id.* at 1049.

Relying on *Pypers*, the Board concluded that Claimant failed to sustain her burden of proving that she was required to be on

the premises at the time of her injury. The Board offered the following rationale:

> Claimant had finished her work duties but remained on the premises (in her home) after her work for her son had been finished. She then went to sleep. Like the employee in *Pypers*, she had completed her duties and then embarked on a course of "recreation" separate and distinct from the duties of her employment. Having finished her work, she was no longer required by the nature of her employment to be present in "Employer's residence," except that it was actually her residence too. Thus, at the time of the attack, she lost her "employee" status and became a resident in her own home. In her recreational capacity, she ceased to be within the course of her employment for purposes of workers' compensation.

(Board's decision at 6.) Accordingly, the Board reversed the WCJ's decision.

### Discussion

■ On appeal to this Court,[4] Claimant argues that the Board erred as a matter of law and that the WCJ's findings are supported by substantial evidence. Initially, we note that a claimant proceeding on a claim petition bears the burden of proving that her injury arose in the course of her employment and was related thereto. Section 301(c) of the Workers' Compensation Act (Act).[5] Whether an employee is injured while in the course of employment is a question of law determined on the basis of the WCJ's findings of fact. *Thompson v. Workers' Compensation Appeal Board*

*Appeal Board (Hines)*, 913 A.2d 345, 348 (Pa. Cmwlth.2006).

4. Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitution-

al rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

5. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

*(Cinema Center)*, 981 A.2d 968, 970 (Pa. Cmwlth.2009).

 It is a fundamental tenet of workers' compensation law that the WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight. *Williams v. Workers' Compensation Appeal Board (USX Corp.–Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth.2004); *McCabe v. Workers' Compensation Appeal Board (Department of Revenue)*, 806 A.2d 512, 515 (Pa.Cmwlth. 2002). The WCJ's credibility determinations are not subject to review on appeal. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 386 (Pa.Cmwlth.1995). For purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the WCJ's necessary findings, those findings will not be disturbed on appeal.[6] *USX Corp.–Fairless Works*, 862 A.2d at 143.

In pertinent part, section 301(c) of the Act states:

The term 'injury arising in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; nor shall it include injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of injury; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1).

In interpreting section 301(c) of the Act, this Court has recognized two situations in which an injury may be sustained in the course of employment:

Injuries may be sustained in the course of employment in two distinct situations: (1) where the employee, whether on or off the employer's premises, is injured while actually engaged in the furtherance of the employer's business or affairs, or (2) **where the employee although not actually engaged in the furtherance of the employer's business or affairs (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on [her] employer's premises; and (c) sustains injuries caused by the condi-**

---

**6.** "Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings." *Rosenberg v. Workers' Compensation Appeal Board (Pike County)*, 942 A.2d 245, 249 n. 4 (Pa. Cmwlth.2008). In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party. *Sell v. Workers' Compensation Appeal Board (LNP Engineering)*, 565 Pa. 114, 123, 771 A.2d 1246, 1251 (2001); *Waldameer Park, Inc. v. Workers' Comp. Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa.Cmwlth.2003).

tion of the premises or by operation of the employer's business or affairs thereon.

*Workmen's Compensation Appeal Board (Slaugenhaupt) v. U.S. Steel Corporation,* 31 Pa.Cmwlth. 329, 376 A.2d 271, 273 (1977) (emphasis added). Here, the WCJ found that Claimant was not furthering the interest of Employer at the time of the injury, but that Claimant established facts satisfying the second situation.

### (1) Required by the Nature of Employment to be on Employer's Premises

On appeal, Claimant asserts that the WCJ's findings collectively establish that she was required by the nature of her employment to live with Employer. As further support, Claimant quotes the following passage from the notes of testimony to substantiate the notion that she had no meaningful choice but to live with Employer:

> Q. [Claimant's counsel]: Did you have any discussions with [Employer] about whether or not the arrangement which you had made with him to be his employee require[d] you two to live together?
>
> A. [Claimant]: Yes. Yes, we had to be together in the same place.
>
> Q. [Claimant's counsel]: And did [Employer] state that?
>
> A. [Claimant]: Yes.

(R.R. at 53a.) On these grounds, Claimant argues that the Board usurped the WCJ's role as fact-finder and disregarded the WCJ's material findings of fact.

Additionally, Claimant cites *Malky v. Kiskiminetas Valley Coal Co.,* 278 Pa. 552, 123 A. 505 (1924), and contends that her injury is compensable under the "bunkhouse rule," in that she is considered to be in the course of employment while sleeping on the premises, even though she was not actively furthering the interests of Employer at the time of the injury. After careful review, we agree with Claimant's arguments.

In *Malky,* our Supreme Court held that, under section 301(c) of the Act, a claimant need only establish that his or her presence on the premises is "required by the nature of [her] employment[.]" 77 P.S. § 411(1). The employer in *Malky* closed its coal mine as a result of a general strike and later reopened its business, dramatically reducing the number of its employees. The employer constructed a bunkhouse upon its premises near the mine, the employees lived there, and the employer hired a watchman to prevent interference by outsiders. Although the employees were free to live in adjacent towns, the Board, acting as fact-finder, found that the circumstances surrounding the strike made it practically impossible for the employees to secure lodging in the villages near the mine. A few days after the mine re-opened, the employees finished their work-shift at 4 p.m., went to the bunkhouse, and were scheduled to work the next morning at 7:00 a.m. During the night, a bomb was thrown through the window, and three of the employees were killed by the explosion. The referee[7] denied compensation on the theory that the employees were not required by the nature of their employment to be on the employer's premises at the time of the explosion. The Board overruled the referee and found the employees' death compensable.

On further appeal, our Supreme Court affirmed the Board. In interpreting a former version of the Act, which, identical to the current Act, utilized the "nature of the

---

7. Prior to the 1996 amendments to the Act, WCJ's were referred to as referees.

employment" language, the court in *Malky* stated:

> The provision of the [Act] is broad enough to include every injury received on the premises of the employer ... so long as the **nature of the employment demands the employee's presence there, regardless of whether his presence at the particular place where the injury occurred is actually required,** if there is nothing to prove a virtual abandonment of the course of employment by the injured person, or that, at the time of the accident, he was engaged in something wholly foreign thereto.

*Malky,* 278 Pa. at 554–55, 123 A. at 506 (emphasis added).

The *Malky* court next noted that an employee's "hours of employment" are not confined to the period for which wages are paid and may be extended beyond that time. The court stated that whether the relationship between master and servant continues after the employee ceases actual labor is a question of fact, and the actual hours of physical work are not necessarily controlling. Rather, the fact-finder must determine "from all the facts and circumstances, whether the employee's presence on the premises was required by the nature of the service." *Malky,* 278 Pa. at 555–56, 123 A. at 506. The Board in *Malky* found that it was impracticable for the employees to obtain lodging elsewhere as a result of the strike, and that it was necessary for the employer to keep the employees on the premises in order to assure continuance of the business operations and prevent outside interference. Applying what has become known as the "bunkhouse rule" to the Board's factual findings, our Supreme Court held that "the occupancy of a house on the premises, under the peculiar circumstances appearing here provided so that [the employees] might be on hand during working hours, was of advantage to the employer, and, when injury occurred thereon, the loss should be compensable." *Id.* at 556, 123 A. at 506.

Although Pennsylvania case law dealing with the bunkhouse rule is scant, other jurisdictions continue to apply the doctrine. In *Pierre v. Seaside Farms, Inc.,* 386 S.C. 534, 689 S.E.2d 615, 621 (2010), the Supreme Court of South Carolina held that the bunkhouse rule "applies when the employee is required to live on the employer's premises **either** by the employment contract or by the nature of the work involved." *Id.* (emphasis in original); *see Vaught v. State,* 157 Cal.App.4th 1538, 69 Cal.Rptr.3d 605, 608 (4th Dist.2007). In addition, Professor Larson observes that, while the case law is less than uniform where living on-premises is not contractually required, the "better view" upholds compensability when living on the premises is "practically required" by the nature of the work or the lack of available housing. 1A Larson, *Workmen's Compensation Law* 5–271, § 24.40 (1993).[8]

Based on the above authority, we construe the "required by the nature of employment" language in section 301(c) of the Act and/or the common law bunkhouse rule to include those situations where the evidence establishes that an employee lives on the premises because he or she is "practically required" to do so. Our decision to include scenarios of this nature is entirely consonant with the facts and underlying rationale of *Malky,* where the employees were not contractually obligated to live in the employer's bunkhouse,

---

**8.** *Accord, e.g., Leo Polehn Orchards v. Hernandez,* 122 Or.App. 241, 857 P.2d 213, 216 (1993); *Lujan v. Payroll Express, Inc.,* 114 N.M. 257, 837 P.2d 451, 454 (Ct.App.1992); *Doe v. St. Michael's Medical Center,* 184 N.J.Super. 1, 445 A.2d 40, 42–44 (Ct.App.Div. 1982); *Hunley v. Industrial Commission,* 113 Ariz. 187, 549 P.2d 159, 160–61 (1976).

had no reasonable alternative than to live in the bunkhouse, and their presence in the bunkhouse was to the employer's advantage.

■ Here, as found by the WCJ, Claimant was hired to provide a variety of attendant care services to Employer for a period of up to 64 hours a week; Employer could request Claimant to provide care anytime Claimant was awake; and Claimant worked evening hours on the weekend and evening hours on a sporadic basis during the weekdays. (WCJ's Findings of Fact Nos. 8–10, 15.) Significantly, Employer did not have another residence in which to receive attendant care, and, under the circumstances of this case, the only feasible way for Claimant to provide Employer with attendant care was to do so in her home. (WCJ's Findings of Fact No. 19, R.R. at 53a.) Finally, Phillips from the Three Rivers Center for Independent Living approached Claimant and specifically asked Claimant to provide care for Employer in her home, and the employment arrangement was approved by the agencies knowing that Employer was going to live with Claimant. (WCJ's Findings of Fact Nos. 6, 19.)

Given the demands of Claimant's job duties as a health care provider and the hours of her employment, combined with the fact that Employer did not have his own residence or anywhere in which to receive attendant care, we conclude that the WCJ's findings establish that, at the very least, Claimant was "practically required" by the nature of her employment to live with Employer. See Leo Polehn Orchards v. Hernandez, 122 Or.App. 241, 857 P.2d 213, 216 (1993) ("It is true that claimant was not required in any contractual sense to live on the employer's premises. Nevertheless, there is evidence that claimant had no other practical alternative. There is testimony from employer's field

manager that it did not want to provide housing for its workers, but it had to, '[b]ecause there's no place to live otherwise.'"); Lujan v. Payroll Express, Inc., 114 N.M. 257, 837 P.2d 451, 454 (Ct.App. 1992) (stating that "[l]ogically, ... even in the absence of a requirement in the employment contract, residence should be deemed 'required' whenever there is no reasonable alternative, in view of ... the lack of availability of accommodations elsewhere."). Akin to the situation in Malky, the facts of this case, as found by the WCJ, prove that Employer had no reasonable alternative other than to live with Claimant, and their living arrangement was of advantage to Employer because Claimant was readily available in the event Employer needed attendant care. Therefore, we conclude that the evidence of record supports the WCJ's finding and legal conclusion that Claimant was required by the nature of her employment to live with Employer.

We further conclude that the Board erred in relying on Pypers to determine that at the time of the injury, Claimant "embarked on a course of recreation separate and distinct from the duties of her employment." (Board decision at 6.) Pypers did not involve a situation where the employee and employer were required by the nature of the employment arrangement to live together, nor did the facts in Pypers implicate the bunkhouse rule. Contrary to the Board's analysis, because Claimant was required by the nature of her employment to live with Employer, it is immaterial that Claimant was sleeping and not furthering the interest of Employer at the time of the assault. Slaugenhaupt, 376 A.2d at 273. Under the bunkhouse rule, the Act "is broad enough to include every injury received on the premises of the employer ... so long as the nature of the employment demands the

employee's presence there." *Malky*, 278 Pa. at 554–55, 123 A. at 506. Presumably, the Board was influenced by the fact that Claimant was a "resident in her own home" and that she was providing care for her son. (Board's decision at 6.) However, Employer had not lived with Claimant since he was 15 years old (WCJ's Finding of Fact No. 5.), and the existence of a familial relationship does not undermine in any way the WCJ's findings of fact or the circumstances surrounding the employment arrangement. Indeed, this Court is unaware of any Pennsylvania authority that states that family members lack the capacity to enter into employment contracts with each other or that employment contracts between family members are unenforceable.

**(2) Premises Occupied or Controlled by Employer or upon which Employer's Business or Affairs are Carried On**

■ Employer nonetheless asserts that Claimant's injury is not compensable as a matter of law because it did not occur on Employer's "premises." Employer contends that Claimant owned the residence and that Employer had no control over her bedroom area, the place where the assault occurred.

■ It is a fundamental precept in Pennsylvania workers' compensation law "that the [Act] is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116, 1120 (1991) (collecting cases). Accordingly, "[b]orderline interpretations of the Act are to be construed in the injured party's favor." *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319, 1321 (1996).

In construing the term "premises" in section 301(c)(1) of the Act, this Court has stated that "the determinative question is not whether the employer had title to or control over the site of the accident[.]" *ICT Group v. Workers' Compensation Appeal Board (Churchray–Woytunick)*, 995 A.2d 927, 931 (Pa.Cmwlth.2010). "[T]he 'premises of the employer' are neither defined as nor limited to the employer's actual property." 6 David Torrey and Andrew E. Greenburg, *Workers' Compensation: Law and Practice* § 4:75 (3d ed. 2008). Rather, by its very language, section 301(c) states, in pertinent part, that an injury must occur on "premises occupied by ... the employer, or upon which the employer's business or affairs are being carried on[.]"

It is well-settled that where a term is not expressly defined in a statute, this Court will construe the term according to its common and approved usage, which may be discerned by consulting dictionary definitions. *Moonlite Cafe v. Department of Health*, 23 A.3d 1111, 1114 (Pa.Cmwlth. 2011). In relevant part, Webster's Third New International Dictionary defines "occupancy" as "to take up residence in: settle in" or "to reside in as an owner or tenant." Webster's Third New International Dictionary, 1561 (Gove, ed. 1986). This same dictionary defines "carry on," in pertinent part, as "to continue one's course or activity." *Id.* at 344.

Here, Claimant's residence was Employer's legal residence at the time of the injury. Claimant's residence was also the place in which Employer paid Claimant to provide him attendant care and where Employer received attendant care for up to 64 hours per week. (WCJ's Findings of Fact Nos. 6–10, 19.) Applying the pertinent statutory language to these facts, we conclude that Employer "occupied" Claimant's residence, or, alternatively, that Claimant's

residence was the location where Employer "carried on" his business affairs.

■■■■ Moreover, it is irrelevant that Employer's occupancy or business affairs did not encroach into Claimant's bedroom. "It is clear that if the employee is required to live on the premises ... by reason of the nature of the employment, any injury resulting from normal activities on the premises is compensable." *Matter of Chapman v. Kiamesha Concord,* 15 A.D.2d 618, 618, 222 N.Y.S.2d 435 (N.Y.App.Div. 3d Dept.1961). By virtue of the bunkhouse rule, the employer's premises is extended to encompass the area where the employee sleeps and/or is "bunked." *See Chandler v. Nello L. Teer Co.,* 53 N.C.App. 766, 281 S.E.2d 718, 721 (1981) (defining the employer's "premises" to include "sleeping, eating and recreational facilities"); *Arnold v. State,* 94 N.M. 278, 609 P.2d 725, 726–27 (Ct.App.1980) (concluding that where employee had no reasonable alternative than to live on the employer's premises the premises included "on-premises sleeping facilities."); *Wilson Cypress Co. v. Miller,* 157 Fla. 459, 26 So.2d 441, 442 (1946) (concluding that where it is contemplated the employee "shall sleep on the employer's premises, as an incident to the employment, and is injured while not engaged on a purely personal mission, the injury is compensable"). Considering the unique facts of this case, the reasoning behind such a rule is straightforward: If the employee and the employer are required to live together as a result of the employment arrangement, then the employee's sleeping quarters should be included as part of the employer's premises because sleeping is a necessity of life.

Here, Claimant's living arrangement with Employer allowed her to serve Employer on an as-needed basis, and sleeping is a normal activity incidental to her job duties and requirement that she cohabit with Employer. *See Chandler,* 281 S.E.2d at 721. By sleeping in the residence, Claimant provided a direct benefit to Employer because she was readily available to render attendant care when she awoke. *See Arnold,* 609 P.2d at 727. Significantly, Claimant was asleep at the time of the assault; she did not sustain an injury while engaged in frolic, business of her own, or some activity wholly foreign to her employment arrangement. *See Wilson Cypress Co.,* 26 So.2d at 442 (upholding compensation under the bunkhouse rule where the employee was permitted to sleep on employer's house-boat and died while asleep on the boat as the result of a fire; the employee was "not engaged on a purely personal mission" when sleeping), *accord Johnson v. Arizona Highway Department,* 78 Ariz. 415, 281 P.2d 123, 124 (1955). Therefore, we conclude that Claimant's residence was Employer's "premises" for purposes of the Act, and that the assault in Claimant's bedroom occurred on Employer's premises.

### (3) Injuries Caused by the Condition of the Premises or by Operation of Employer's Business or Affairs

Finally, Employer argues that Claimant's injury is not compensable as a matter of law because she did not sustain an injury as a result of a condition of the premises or Employer's business affairs.

Section 301(c)(1) of the Act covers "injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon." *Id.* However, under the "personal animus" exception in section 301(c)(1), injuries "caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment" are excluded from coverage. *Id.*

"When an employee is injured on the work premises by the act of another employee, there is a rebuttable presumption that the employee is covered by the Act." *General Electric Co. v. Workmen's Compensation Appeal Board (Williams)*, 50 Pa.Cmwlth. 45, 412 A.2d 196, 197 (1980). "Therefore, where it is alleged that compensation is not payable under [s]ection 301(c), the burden of proving that an injury was caused by . . . reasons personal to the assailant rests with the employer." *Id.* If the employer is successful in carrying its burden, the "[t]he personal animus exception will rebut the presumption that an injury that occurs on the employer's premises is work-related." *Allegheny Ludlum Corp. v. Workers' Compensation Appeal Board (Hines)*, 913 A.2d 345, 350 (Pa. Cmwlth.2006).

Here, it was Employer himself who assaulted Claimant. (WCJ's Findings of Fact Nos. 4, 8.) In this context, we discern no basis to apply a rebuttable presumption where a co-worker injures an employee on the premises, and not where, as here, an employer injures an employee on the premises. In relevant part, Webster's Third New International Dictionary defines "third person" as referring "not [to] the one to whom the utterance is addressed," *id.* at 2378, *i.e.*, the employee, and there is no language in section 301(c) limiting a "third person" to someone other than the employer. This Court declines to impose such a limitation when none was provided by our legislature. Accordingly, we construe the term "third person" in section 301(c) to include an employer acting in an individual capacity.

Assuming that the personal animus exception could apply, the WCJ found that the evidence surrounding the attack was inconclusive, and that it is unknown why or for what reason Employer assaulted Claimant. (WCJ's Finding of Fact No. 18.) As a result, Employer did not rebut the presumption that Claimant is covered under the Act, and this Court must assume, as a matter of law, that the assault occurring on Employer's premises involved Employer's business or affairs. *Allegheny Ludlum Corp.*, 913 A.2d at 350. *See Wills Eye Hospital v. Workmen's Compensation Appeal Board (Dewaele)*, 135 Pa.Cmwlth. 6, 582 A.2d 39 (1988) (concluding that the presumption in favor of coverage under the Act applied where an employee struck the claimant with an iron pipe on the employer's premises and the employee's motivation for doing so was "unclear"). *See also Malky*, 278 Pa. at 554–55, 123 A. at 506 (concluding that the Act "is broad enough to include every injury received on the premises of the employer . . . so long as the nature of the employment demands the employee's presence there."); *Matter of Torres v. Laurel Hill Nursery*, 98 A.D.2d 904, 904, 470 N.Y.S.2d 897 (N.Y.App.Div. 3d Dept.1983) (concluding that where an employee was stabbed to death by another employee, the death was compensable because the employee was required by the employer to stay at the residence, and "any accident that befalls the employee on the premises will be presumed to have arisen out of and in the course of employment."). Therefore, because Employer failed to establish that the assault occurred due to personal animus, we conclude that Claimant, by virtue of an un-rebutted evidentiary presumption, proved the third and final element of *Slaugenhaupt's* second test.

### Conclusion

For the above-stated reasons, we conclude that, as a matter of law, Claimant satisfied all the requirements necessary for compensability under the second test outlined in *Slaugenhaupt*. Claimant established that she was practically required

by the nature of her employment to live with Employer; that she was injured on premises occupied by Employer or where Employer's business or affairs were being carried on; and that her injuries were caused by the operation of Employer's business or affairs. Accordingly, the WCJ properly determined that Claimant's injury was compensable under the Act, and we reverse the Board's order.

### ORDER

AND NOW, this 8th day of January, 2014, the August 29, 2012 order of the Workers' Compensation Appeal Board is reversed.

DISSENTING OPINION BY Judge LEADBETTER.

In the middle of the night, a young man stabbed his mother with a butcher knife while she lay sleeping in her own bed, in her own home. I believe it defies logic to call this a work related injury. Therefore, I would affirm the Board and so must respectfully dissent.